**Henry J. McCRACKEN, Jr., and Lula McCracken, Appellants,**

v.

**William Jeter BROWN, Jr., and Silba Ann Brown, Appellees.**

**In re William Jeter BROWN, Jr. and Silba Ann Brown, Debtors.**

**Civ. No. A–C–88–29.**

United States District Court, W.D. North Carolina, Asheville Division.

April 6, 1989.

been proper in the district to which the case is transferred.

David G. Gray, Westall, Gray, Kimel & Connolly, Asheville, N.C., for appellants.

Wayne Sigmon, Chapter 12 Trustee, Gastonia, N.C.

Robert M. Pitts, Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, Asheville, N.C., for debtors.

### MEMORANDUM AND ORDER

RICHARD L. VOORHEES, District Judge.

THIS MATTER is before the Court on an appeal from the Plan entered by Bankrupt-

cy Judge George R. Hodges in the United States Bankruptcy Court for the Western District of North Carolina on December 17, 1987. This appeal was perfected by Henry J. and Lula McCracken, secured creditors. For the reasons stated, the Plan will be upheld, subject to two modifications.

■ Appellants Henry J. and Lula B. McCracken charge that several of the findings of fact Judge Hodges made were in error, and that, consequently, the Plan he ordered was unsound and must be vacated. A federal district court reviewing the findings of a bankruptcy court will not disturb such findings unless they are clearly erroneous. Bankruptcy Rule 8013 states, "[f]indings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses."

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The various findings Judge Hodges made to which appellants assign error have been examined, and this Court cannot form such a "definite and firm conviction" of error as to any one of them.

■ The dispute concerns 37 acres of a larger parcel of property owned by William Jeter Brown Jr. and Silba Ann Brown, the Debtors, which they purchased from the McCrackens in 1983. These 37 acres are referred to in both parties' materials as the "bottom land." The Bankruptcy Court permitted the Browns to retain the bottom land finding that they needed it to grow silage for a dairy farm they operate on other property. The McCrackens wanted to foreclose.

One issue is whether the Bankruptcy Court assigned the correct value to the bottom land. It was held to be worth $2,000 per acre, or $74,000 in total. Both parties called expert witnesses who had appraised the property. The McCrackens' appraiser testified in detail as to his valuation of $2,000 per acre. His testimony was supported by a written report illustrated with numerous photographs. His appraisal seems to have been perfectly credible. This is simply a situation where the parties took conflicting positions, and the Bankruptcy Court decided which side to believe based on the credibility of the testimony. This is a textbook example of a situation where "the opportunity ... to judge the credibility of the witnesses" belongs to the Bankruptcy Judge, and not to this Court. The mere fact that there was conflicting testimony is no basis for a ruling that the Bankruptcy Court's finding was clearly erroneous.

Much the same reasoning applies to numerous other of the Bankruptcy Court's findings. It suffices to say that all were supported by evidence in the record adequate to justify them if the Bankruptcy Court chose to believe them, as it did. This Court will not disturb them.

■ One argument that appears in the McCrackens' appeal in various forms is that the Plan is basically unfair and onerous in its treatment of them. They contend that in view of their advanced age, the McCrackens need to be allowed to foreclose on all of the land so they can resell it and enjoy the profits while they are still alive, rather than be forced to submit to a fifteen-year bankruptcy plan. It is asserted that because of considerations like this, the law should treat private parties differently from banks.

First, nothing in Chapter 12 suggests such a result. One of the risks a creditor takes in extending credit is that the debtor may wind up in bankruptcy. The McCrackens took that risk. Second, the Plan does not deprive them of the value of their interest. The Bankruptcy Court found that the value of such interest under the Plan was equal to what the McCrackens would have if a liquidation under Chapter 7 were ordered, as indeed it had to find in order to institute the Plan in the first place: 11 U.S.C. § 1225(a)(4) requires that. Once again, the Bankruptcy Court's finding that the cash payments the McCrackens were to

receive under the Plan were adequate compensation given the value of the land was one based on the credibility of the witnesses, and will not be disturbed.

In addition, it appears that the interest the McCrackens retain in the bottom land is alienable. They presumably could sell it for a lump sum, or borrow money against it. The discounted price would no doubt represent a loss, given the bankruptcy milieu of the obligation sold. The Court can sympathize with the appellants, but that provides no basis for reversal of the bankruptcy judge, whose job was to do equity in the first place for all concerned under the law. On this record, it cannot be said that he failed in that task. No doubt the McCrackens would have been better off if the Browns had not had to enter bankruptcy: any creditor of a bankrupt can say the same. However, that mere fact does not mean that the McCrackens are being so unfairly treated that the Plan must be unsound.

■ One argument Appellants make that appears to have some merit is the one as to the feasibility of the Plan, and the ability of the Browns to meet their financial obligations under it, as is required by 11 U.S.C. § 1225(a)(6). A calculation was presented arguing that when the annual total payments required of the Browns to their creditors, their reasonable living expenses, and their probable taxes are added together, the total is much larger than the disposable income Mr. Brown estimated he would earn. *Brief of Appellants* at 9.

If correct, this calculation would be compelling evidence that the Plan was unsound. However, the Court sees two problems with this evidence. First, it was not offered at the hearing before the Bankruptcy Court, and was not part of the Bankruptcy Court's review of the evidence which is examined to determine whether that Court's decision was clearly erroneous. To raise this issue *de novo* on appeal is extremely questionable. Secondly, it has been some ten months since Appellants' brief was filed. Much water has gone under the bridge since then. It would be rather odd to make the determination of whether the Browns are likely to be able to pay the McCrackens today or in the future on the basis of such "yesterday's news" when undoubtedly evidence as to whether the McCrackens are in compliance with the Plan is now available. Appellants have filed no supplementary materials to assert that the Browns are not complying. Presumably, the reason they have not is be-. cause the Browns are complying with the Plan. In any case, if the Browns are not in compliance, or ever fail to be so in the future, that would give the McCrackens, or any of the other creditors under the Plan, a new claim for relief to protect their interests. Accordingly, the Bankruptcy Court's finding that the Plan was feasible is deemed reasonable, and not clearly erroneous.

■ It was argued at the hearing that severing the bottom land will lead to a devaluation of the remaining part, which is not on any road. Counsel for Appellees asserted that an easement to that parcel via an existing road probably had been established, but that if it had not, Appellees would certainly grant one. This Court will order that the Plan be modified to require the Browns to supply such an easement to the McCrackens, or whoever else may become the possessor of that parcel, of such quality and upon such terms and conditions, and duration, including permanent or perpetual, as may be approved by the Bankruptcy Judge.

■ Another point Appellants make that is meritorious is that during the Bankruptcy Court hearing, the parties stipulated to an indebtedness of $278,004.83 as of October 21, 1987. The Plan specified an amount of $268,864.66. Both sides agree that the stipulated amount is correct; the divergence appears to have been the result of a clerical error. Accordingly, the Plan will be ordered modified in that detail.

IT IS, THEREFORE, ORDERED that the decision of the Bankruptcy Court is hereby AFFIRMED with the following modifications:

1. That the Plan be modified to require the Browns to supply an easement to the

"bottom land" parcel to the McCrackens, or whoever else may become the possessor of that parcel, of such quality and upon such terms and conditions, and duration, including permanent or perpetual, as may be approved by the Bankruptcy Court; and

2. That the Plan be modified to reflect the amount of the Browns' indebtedness to be $278,004.83 as stipulated by the parties.